# Exhibit E

# Motion to Stay Proceedings

Opinion

*Sun Pacific Marketing Cooperative, Inc. v. DiMare Fresh, Inc.,*
2007 U.S. Dist. LEXIS 32437
(E.D. Cal. 2007)

LEXSEE 2007 U.S. DIST. LEXIS 32437

SUN PACIFIC MARKETING COOPERATIVE, INC., Plaintiff, v. DIMARE FRESH, INC., Defendant.

CIV-F-06-1404 AWI

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

2007 U.S. Dist. LEXIS 32437

April 18, 2007, Decided
April 19, 2007, Filed

**PRIOR HISTORY:** *DiMare Fresh, Inc. v. Sun Pac. Mktg. Coop.,* 2006 U.S. Dist. LEXIS 70795 (E.D. Cal., Sept. 19, 2006)

**COUNSEL:** [*1] For Sun Pacific Marketing Cooperative, Inc., Plaintiff: Katy Koestner Esquivel - PRO HAC VICE, Lawrence H. Meuers, LEAD ATTORNEYS, Meuers Law Firm, P.L., Naples, FL.

For Dimare Fresh, Inc., Defendant: Stephen McCarron - PRO HAC VICE, LEAD ATTORNEY, McCarron and Diess, Washington, DC; Alyson A. Berg, Wilkins, Drolshagen & Czeshinski, LLP, Fresno, CA.

For Sun Pacific Marketing Cooperative, Inc., Counter Defendant: Katy Koestner Esquivel - PRO HAC VICE, Lawrence H. Meuers, LEAD ATTORNEYS, Meuers Law Firm, P.L., Naples, FL.

**JUDGES:** Anthony W. Ishii, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Anthony W. Ishii

**OPINION**

**ORDER RE: DEFENDANT'S MOTION TO STAY**

Plaintiff filed suit alleging breach of contract and violations of the Perishable Agricultural Commodities Act, *7 U.S.C. § 499a-499t* ("PACA"). The matter is before the court on Defendant's motion to stay the case pending resolution of a reparation complaint before the Unites States Department of Agriculture ("USDA"). Plaintiff opposes the motion. The matter was taken under submission without benefit of oral argument.

**I. History**

Both Plaintiff Sun Pacific Marketing Cooperative, Inc. ("Sun Pacific") and Defendant [*2] DiMare Fresh, Inc. ("DiMare") are companies engaged in buying and selling wholesale quantities of produce. Both parties are licensed commission merchants and dealers under *7 U.S.C. § 499a(b)(5)* and *(6)*. By contract dated June 5, 2006 ("Original Contract"), DiMare agreed to buy from Sun Pacific a set quantity of various types of tomatoes at set prices every week from July 17, 2006 through October 31, 2006. The Original Contract specified that "In the event of a product shortage caused by an Act of God, Natural disaster or other incident that could not be foreseen and is beyond the control of Sun Pacific, then performance under this contract shall be excused." By letter dated September 4, 2006, Sun Pacific notified DiMare that it was canceling performance of the Original Contract under the Act of God provision due to tomato shortages caused by heat and rain during July and August in Central California. Between September 7 and September 12, 2006, Sun Pacific continued to sell DiMare tomatoes. Sun Pacific argues that the sales were pursuant to a new understanding between the parties with a higher sales price ("Provisional Agreement"). DiMare argues that they were [*3] made pursuant to the Original Contract, and paid Sun Pacific based on the prices contained therein. By letter dated September 12, 2006, DiMare outlined its objections to Sun Pacific's interpretation of the Original Contract. There do not appear to have been any more tomato sales by Sun Pacific to DiMare after September 12, 2006. DiMare purchased tomatoes from other companies on the open market for the remainder of the Original Contract term.

DiMare first brought suit on September 14, 2006 against Sun Pacific, alleging breach of the Original Contract and seeking specific performance (*DiMare v. Sun*

Case 4:07-cv-03635-SBA    Document 15-6    Filed 10/05/2007    Page 3 of 5

Page 2
2007 U.S. Dist. LEXIS 32437, *

*Pacific,* CIV 06-1265 AWI). This court denied DiMare's request for a temporary restraining order which sought to force Sun Pacific to sell tomatoes to DiMare in accordance with the quantity and price terms of the Original Contract. On September 25, 2006, DiMare voluntarily dismissed the suit without prejudice.

On October 11, 2006, Sun Pacific filed suit against DiMare (the present suit). Sun Pacific's operative complaint has five loosely organized counts: (1) declaratory relief that the weather events during the summer of 2006 qualify under the Act of God provision in the Original Contract; [*4] (2) violation of duty to pay promptly under PACA; (3) breach of Provisional Agreement; (4); declaratory relief that receipt of tomatoes under the Provisional Agreement created a PACA trust; and (5) enforcement of payment through the PACA trust. See Doc. 10, Amended Complaint.

By letter dated November 7, 2006, DiMare filed an informal reparation complaint pursuant to *7 U.S.C. § 499f(a)*, seeking damages for breach of the Original Contract, with the USDA ("Reparation Proceeding"). The Reparation Proceeding was assigned a PACA File number, W-07-61. DiMare filed an answer and counterclaim in this case on December 5, 2006. The counterclaim alleges both breach of Original Contract and PACA causes of action for failure to deliver in accordance with the terms of a contract. By letter dated December 18, 2006, Sun Pacific asked the USDA to abstain from the Reparation Proceeding as it is largely duplicative of this case. DiMare made a formal reparation complaint to the USDA on January 8, 2007, requesting a hearing in the Reparation Proceeding. By letter dated January 9, 2007, DiMare notified the USDA that it believes the Reparation Proceeding is the best channel through [*5] which to adjudicate the dispute.

## II. Legal Standards

A district court has the discretionary power to stay its own proceedings under *Landis v. North American Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)*. "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)*.

## III. Discussion

The parties' arguments do not fully match up point for point. To resolve the motion, the court will [*6] consider them as necessary. DiMare makes two arguments, either of which would be sufficient to justify staying this case: (1) the USDA has primary jurisdiction over PACA claims and (2) the court should exercise its inherent discretionary authority to stay. Doc. 20, Brief, at 5:3-5. Sun Pacific argues that (1) the case centers around contract interpretation involving California law; (2) Sun Pacific has elected to pursue its PACA remedies in federal district court as opposed to the Reparation Proceeding; and (3) the USDA does not have primary jurisdiction over PACA claims. Doc. 26, Opposition, at 4:23-10:15. Both sides agree that "Denial of DiMare's Motion to Stay, absent additional relief by this Court, will result in two likely conflicting interpretations of the Contract." Doc. 26, Opposition, at 10:26-27.

In its opposition, Sun Pacific also requests that the court exercise its power under the All Writs Act to stay the Reparation Proceeding. See Doc. 26, Opposition, at 10:16-12:2. DiMare correctly notes that such a request is not properly made in opposition and needs to be a noticed motion. Doc. 27, Reply, at 3:9-12. The issue has not been fully briefed by the parties, and the court [*7] will not consider staying the Reparation Proceeding in this order.[1]

---

1 Sun Pacific has cited to an unpublished Ninth Circuit case issued in 2002. Doc. 26, Opposition, at 11:16-17. *Ninth Circuit Rule 36-3* states, "Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit, except in the following circumstances..." None of the exceptions apply in this case. Sun Pacific is reminded that in most circumstances, unpublished Ninth Circuit cases are not precedent and may not even be cited to or by the courts of the circuit.

### A. Primary Jurisdiction Over PACA Claims

DiMare asserts that the USDA, through the Reparation Proceeding, has primary jurisdiction over all matters relating to violations of PACA. The USDA reparation procedure is authorized by statutory provisions of PACA. "Any person complaining of any violation of any provision of section 2 [*7 U.S.C. § 499b*] by any commission merchant, dealer, or broker may, [*8] at any time within nine months after the cause of action accrues, apply to the Secretary by petition, which shall briefly state the facts, whereupon, if, in the opinion of the Secre-

Case 4:07-cv-03635-SBA    Document 15-6    Filed 10/05/2007    Page 4 of 5

Page 3
2007 U.S. Dist. LEXIS 32437, *

tary, the facts therein contained warrant such action, a copy of the complaint thus made shall be forwarded by the Secretary to the commission merchant, dealer, or broker, who shall be called upon to satisfy the complaint, or to answer it in writing, within a reasonable time to be prescribed by the Secretary." *7 U.S.C. § 499f(a)(1)*. PACA claims "may be enforced either (1) by complaint to the Secretary as hereinafter provided, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now [on June 10, 1930] existing at common law or by statute, and the provisions of this Act are in addition to such remedies." *7 U.S.C. § 499e*.

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties....[Primary jurisdiction] applies [*9] where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western P. R. Co., 352 U.S. 59, 63-4, 77 S. Ct. 161, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956)*. "There are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *United States v. General Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987)*. Where a stay is indicated under the primary jurisdiction doctrine, the district court must put a hold on its own proceedings; stay in such cases is not discretionary. *United States v. General Dynamics Corp., 828 F.2d 1356, 1364 n.15 (9th Cir. 1987)*. [*10]

In *General Dynamics,* the Ninth Circuit found primary jurisdiction lacking on the basis (among other bases) that "the [statute] does not require contractors to resolve their disputes with the government before boards of contract appeals: 'in lieu of appealing...to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court...' In direct-action cases, the relevant board of contract appeals does not have primary jurisdiction, although the cases and issues are identical to those it was statutorily designed to entertain." *United States v. General Dynamics Corp., 828 F.2d 1356, 1364 (9th Cir. 1987)*, quoting *41 U.S.C. § 609(a)(1)*. To show the contrast when primary jurisdiction did apply, the Ninth Circuit noted that "Under the Interstate Commerce Act, a reparation claim could be brought by complaint to the ICC or by suit in federal district court. However, if a claim brought in district court raised issues of transportation policy, the doctrine of primary jurisdiction required the parties to litigate the claim first before the ICC." *United States v. General Dynamics Corp., 828 F.2d 1356, 1364 n.14 (9th Cir. 1987),* [*11] citing *Interstate Commerce Comm'n v. Atlantic C. L. R. Co., 383 U.S. 576, 579-80, 86 S. Ct. 1000, 16 L. Ed. 2d 109 (1966)*. Where parties may elect either to go through the administrative channel or the courts, the substance of the dispute must be examined. In the *General Dynamics* framework, the issue (factor one) must be one that requires expertise or uniformity (factor four). Taking the Interstate Commerce Commission as an example, where "issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by the Act" are present, then the court proceeding should be stayed. *ICC v. Atlantic Coast Line. R.R., 383 U.S. 576, 579 (1966)*, quoting *United States v. Western P. R. Co., 352 U.S. 59, 65, 77 S. Ct. 161, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956)*. Where such issues are not raised, the case may proceed in court.

The case at hand appears to be a garden variety contract/PACA case and does not implicate any particular issues of note. DiMare does not argue or indicate that this is a special case that has wider agricultural sales policy implications. Instead, DiMare states "Congress enacted PACA, which subjects the wholesale produce [*12] industry to a comprehensive regulatory scheme requiring both expertise and uniformity of administration. In addition, Congress specifically delegated to the Secretary the authority to decide issues relating to violations of the PACA upon the filing of a complaint by one produce merchant against another in a reparation proceeding." Doc. 20, Brief, at 5:25-6:2. DiMare, in effect, must be arguing that the USDA has primary jurisdiction over all produce disputes in which there is a PACA cause of action. In light of the case law outlining the strict rules governing application of the doctrine, courts should stay proceedings in all cases containing PACA claims under that theory.

PACA is a law that first came into effect in 1930. DiMare has provided no citation for the proposition that the USDA has primary jurisdiction over general PACA violations. In fact, DiMare has cited no instance where a primary jurisdiction stay has been granted in any PACA case. Instead, there is voluminous caselaw in which district courts adjudicated PACA claims without reference to USDA reparation procedures. See, e.g. *Pride of San Juan, Inc. v. Dible, 2006 U.S. Dist. LEXIS 76171 (N.D. Cal. 2006)*; [*13] *Prestige Produce, Inc. v. Silver Creek, Inc., 2006 U.S. Dist. LEXIS 13356 (D. Idaho 2006)*; JC

*Produce, Inc. v. Paragon Steakhouse Restaurants, Inc., 70 F. Supp. 2d 1119 (E.D. Cal. 1999).* If the USDA, through its reparation procedures, did have primary jurisdiction over all produce disputes, then the district court cases cited above should all have been stayed. Primary jurisdiction does not apply in this case.

### B. Inherent Discretionary Authority to Stay

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court. In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." *Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-4 (9th Cir. 1979).* [*14] DiMare argues that "since either party in a PACA reparation proceeding may appeal the Secretary's decision to a district court under § 499g(c), there would be no potential for a conflict if the matter was stayed now, and reopened at the instance of either party on appeal. Thus, both parties still have this forum available if either is dissatisfied with the Secretary's decision." Doc. 20, Brief, at 8:4-9. Sun Pacific concurs that "if the matter proceeds before the U.S.D.A., the non-prevailing party may appeal to this Court." Doc. 26, Opposition, at 11:23-24. The main thrust of the request for stay is to avoid dueling cases determining the exact same subject matter. Avoiding parallel and duplicative proceedings within federal adjudicative systems where there is the risk of conflicting rulings justifies a discretionary stay. *Ctr. for Biological Diversity v. United States DOI, 255 F. Supp. 2d 1030, 1036-7 (D. Ariz. 2003).*

Sun Pacific argues that it has clearly elected to pursue its PACA claims in federal court. Doc. 26, Opposition, at 5:25. Sun Pacific acknowledges that DiMare has elected to pursue its PACA claims through the Reparation Proceeding. Doc. 26, Opposition, [*15] at 6:5-7. Sun Pacific makes no argument that its election deprives the USDA of jurisdiction. Sun Pacific issues a broad condemnation of the whole Reparation Proceeding scheme under the heading "USDA rules of practice deny parties opportunities to conduct discovery and have case adjudicated in an impartial forum." Doc. 26, Opposition, at 8:19-20. Indeed, Sun Pacific states that the USDA rules governing the Reparation Proceeding (*7 C.F.R. §§ 47.1-47.49*) "do not permit a thorough fact-finding or for complete presentation of documentary and testimonial evidence." Doc. 26, Opposition, a t 8:26-27. While expressing extreme dissatisfaction with those rules, Sun Pacific has not directly suggested that they violate constitutional due process standards. The court understands that Sun Pacific is unhappy with the procedures, but the rules and regulations for conducting Reparation Proceedings have been legally promulgated by the USDA.

In fact, their streamlined nature should ensure that the Reparation Proceeding will proceed on an expedited basis. "A stay should not be granted unless it appears likely the other proceedings will be concluded within a [*16] reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 864 (9th Cir. 1979).* A stay may be disfavored where the suit includes allegations of ongoing or future harms as opposed to one dealing solely with past harms. *Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005).* In this case, there are no allegations of ongoing harms by either party; the claims are not urgent.

### IV. Order

DiMare's motion for stay is GRANTED. This case is STAYED pending further order of the court. Plaintiff Sun Pacific is directed to file a notice with the court when the USDA PACA Reparation Proceeding, File No. W-R-07-61 and all cases or proceedings relating to this Reparation Proceeding have reached full and final judgment.

IT IS SO ORDERED.

Dated: *April 18, 2007*

/s/ Anthony W. Ishii

UNITED STATES DISTRICT JUDGE